**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GENERAL CASUALTY COMPANY ) | |
| OF WISCONSIN, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:18-cv-6062 |
| ) | |
| v. ) | Hon. Steven C. Seeger |
| ) | |
| TECHLOSS CONSULTING AND ) | |
| RESTORATION, SHARGIO PATEL ) | |
| REALTY, LLC, CHICAGO TITLE ) | |
| LAND TRUST COMPANY, ) | |
| ALGONQUIN-BUSSE BUILDING, ) | |
| LLC, SUBURBAN REAL ESTATE ) | |
| SERVICES INC., and ROBERT ) | |
| KARBIN, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This insurance coverage case began with a fall from a ladder. The employee who suffered the fall sued for his injuries in state court. The insurance company later filed this declaratory judgment action against the employer, the landlord, the property manager, and a few others. The insurer seeks a declaration that it does not owe coverage under an insurance policy issued to the employer (*i.e.,* the tenant). The landlord counterclaimed, seeking coverage under the employer/tenant's insurance policy.

The parties ultimately filed cross motions for summary judgment. The insurance company, General Casualty Company of Wisconsin ("General Casualty"), argues that the policy does not cover the landlord, Shargio Patel Realty, LLC ("Patel Realty"), because it is not an insured. On the flipside, Patel Realty argues that it is an "additional insured" under the policy issued to the employer/tenant, Techloss Consulting & Restoration ("Techloss").

The insurance company also seeks a declaration that it owes nothing to Techloss, the insured. It argues that the accident falls within an exclusion in the policy for bodily injuries to employees.

For the reasons stated below, General Casualty's motion for summary judgment is granted on its claim against Patel Realty. General Casualty's motion for summary judgment on its claim against Techloss is denied as moot because Techloss is no longer seeking anything under the policy. Patel Realty's motion for summary judgment is denied.

## Background

On July 11, 2016, Robert Karbin climbed a ladder while on the job. He was a Vice President at Techloss, and he wanted to inspect the cabling in the ceiling at the office. His firm was about to relocate, so perhaps he wanted to see the set up with the cables before moving to the new location. As he was atop the ladder, the ceiling crashed down, and so did Karbin. He broke his hip and suffered permanent injuries. *See generally* Cplt. in *Karbin v. Shargio Patel Realty, LLC et al.* (Ill. Cir. Ct. 2016) (Dckt. No. 38-1); *see also* 10/23/19 Tr.

At the time of the accident, Techloss had an insurance policy issued by General Casualty. *See* Policy (Dckt. No. 1-3); Def. Patel Realty's Resp. to Pl.'s Statement of Facts, at ¶ 15 (Dckt. No. 48). The policy had effective dates from September 6, 2015 to September 6, 2016, so the accident took place within the policy period. *See* Def. Patel Realty's Resp. to Pl.'s Statement of Facts, at ¶ 15 (Dckt. No. 48). Techloss is the only named insured. *Id.* at ¶ 16.

Karbin filed a lawsuit in state court against Patel Realty, the owner of the property.[1] *See* Cplt. in *Karbin v. Shargio Patel Realty, LLC et al.* (Ill. Cir. Ct. 2016) (Dckt. No. 38-1). He later

---

[1] The state court complaint alleged that Patel Realty "owned, managed and/or leased" the property. *See* Cplt. at ¶ 1, in *Karbin v. Shargio Patel Realty, LLC et al.* (Ill. Cir. Ct. 2016) (Dckt. No. 38-1). In the summary judgment filings before this Court, the parties agreed that Patel Realty was the property owner

amended the complaint several times to bring claims against the property manager (Suburban Real Estate Services, Inc.), the former owner (Chicago Title Land Trust Co.), and a former property manager (Algonquin-Busse Building, LLC). *See* First Am. Cplt. (Dckt. No. 38-2); Second Am. Cplt. (Dckt. No. 38-3); Third Am. Cplt. (Dckt. No. 38-5); *see also* Pl.'s Resp. to Def. Patel Realty's Statement of Facts, at ¶¶ 4–6 (Dckt. No. 51).

The property manager, Suburban Real Estate Services, then filed a third party complaint against Techloss, the employer (and the named insured). *See* Third Party Cplt. in *Karbin v. Shargio Patel Realty, LLC et al.* (Ill. Cir. Ct. 2018) (Dckt. No. 38-4). Suburban basically alleged that Techloss was to blame for allowing an unsafe ceiling at the workplace, and for failing to train its employee on how to use a ladder. *Id.*

Patel Realty and Techloss later tendered the claims for defense and indemnity to General Casualty, the insurer. *See* Dckt. No. 38-11; Dckt. No. 38-12. General Casualty responded by filing this lawsuit.

Count I seeks a declaratory judgment that General Casualty owes no defense and no coverage to Techloss because the policy excludes bodily injuries to employees. *See* Cplt. (Dckt. No. 1). Count II seeks a declaratory judgment that General Casualty has no duty to defend or indemnify Patel Realty because it is not an insured under the policy. *Id.* Counts III and IV seek declarations that the policy does not cover the former property owner (Chicago Title) or the former property manager (Algonquin-Busse). *Id.*

Patel Realty filed a counterclaim, seeking a declaration of coverage. *See* Dckt. No. 21. The Court later granted an agreed motion to dismiss Chicago Title and Algonquin-Busse. *See* Dckt. No. 26. So the insurer's only two remaining claims are against Techloss and Patel Realty.

---

at the time of the accident. *See, e.g.,* Pl.'s Resp. to Def. Patel Realty's Statement of Facts, at ¶ 37 (Dckt. No. 51).

3

General Casualty ultimately filed for summary judgment, arguing that it owes no duty to defend and no duty to indemnify Techloss (the only named insured) or Patel Realty. *See* Dckt. No. 34. Techloss did not file a response to the motion. Patel Realty also filed a motion for summary judgment of its own, seeking a declaration that it is an "additional insured" within the meaning of the policy. *See* Dckt. No. 38.

Meanwhile, in the state court case, Suburban Real Estate Services (the property manager) prevailed on its motion for summary judgment on the claims brought by Karbin, the injured employee. *See* Dckt. No. 36-1, at 2 of 2. Suburban Real Estate Services then voluntarily dismissed its third party complaint against Techloss, the insured. The rest of the state court case ultimately settled. *See* 10/23/19 Tr. Apart from Patel Realty, no one involved in the state court case is currently seeking anything from General Casualty under the policy.

**Analysis**

Rule 56 provides that the Court "shall grant" summary judgment when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute about a material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 250 (internal quotation marks omitted).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the

4

party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (cleaned up). The Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

When parties file cross motions for summary judgment, the Court construes all facts and draws all reasonable inferences in favor of the party against whom the motion was filed. *See Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 361 (7th Cir. 2017). The Court treats the motions "separately in determining whether judgment should be entered in accordance with Rule 56." *Marcatante v. City of Chicago*, 657 F.3d 433, 439 (7th Cir. 2011); *see also Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 416 (7th Cir. 2019) ("Each cross movant for summary judgment bears a respective burden to show no issue of material fact with respect to the claim.").

The parties did not discuss choice of law in their briefs. They simply took it as a given that Illinois law applies. In supplemental filings ordered by the Court (*see* Dckt. No. 72), the parties confirmed that the policy does not contain a choice-of-law provision, but they once again agreed that Illinois law applies. *See* General Casualty's Statement Responding to Court's Questions Regarding Summary Judgment, at 1–2 (Dckt. No. 76); Shargio Patel Realty, LLC's Statement Responding to the 5-6-20 Minute Order, at 2 (Dckt. No. 77). So the Court, too, applies Illinois law.

I. **Coverage of Patel Realty**

General Casualty first argues that it owes no duty to defend or indemnify Patel Realty, the landlord, because it is not covered by the policy. The insurer claims that Patel Realty wasn't a named insured, and it wasn't an additional insured, either.

The argument begins simply enough. The first page of the policy identifies the insured as "Techloss Consulting and Restoration Inc." *See* Policy, Policy Declarations, at 1 of 5 (Dckt. No. 1-3, at 2 of 102). There is no other named insured. *See* Def. Patel Realty's Resp. to Pl.'s Statement of Facts, at ¶¶ 16–17 (Dckt. No. 48). Patel Realty, in particular, is not a named insured. *Id.*

The coverage provision later reinforces the point. It says that General Casualty will pay sums that "*the* insured" – singular, using a definite article – becomes obligated to pay. *See* Policy, Businessowners Coverage Form, at 29 of 47 (Dckt. No. 1-3, at 54 of 102) (emphasis added). In a paragraph entitled "Who Is An Insured," the policy provides that "[i]f you are designated in the Declarations as . . . [a]n organization other than a partnership, joint venture or limited liability company, you are an insured." *Id.* at 38–39 of 47 (Dckt. No. 1-3, at 63–64 of 102).

But Patel Realty points to a provision that allows for coverage for an "additional insured," subject to certain conditions. The policy contains an endorsement that expands the scope of coverage, entitled "**BLANKET ADDITIONAL INSURED – WHEN REQUIRED BY WRITTEN AGREEMENT**." *See* Policy, BP 70 84 11 09, at 1 of 1 (Dckt. No. 1-3, at 79 of 102) (bold and all caps in original). The policy basically extends coverage to third parties when the insured (here, Techloss) enters into a written contract with that third party to obtain coverage:

6

> **Paragraph C. Who is an insured in Section II – Liability**
>
> A. Is amended to include as an additional insured any person or organization when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.

*Id.* "All other terms and conditions of this policy remain unchanged." *Id.*

The response from General Casualty is straightforward. That provision extends coverage to an additional insured only if "you" – meaning Techloss, the insured – and a third party "agreed in writing in a contract or agreement" that the third party would be added as an insured on the policy. *Id.* But Techloss (the insured, and the tenant) never entered into a written agreement with Patel Realty (the landlord) that Patel Realty would be added as an insured.

General Casualty points to deposition testimony from both Techloss and Patel Realty to show that there was no contract. Robert Karbin (the VP who fell off a ladder) testified that there was no lease agreement – or any other written agreement of any kind – between those two companies:

> Q: Was there any lease agreement between Patel Realty and Techloss, Inc.?
>
> A: No.
>
> Q: Was there any written agreement between any Techloss entity and Patel Realty?
>
> A: No.

*See* Karbin Dep., at 13:23 – 14:4 (Dckt. No. 36-2). Shrujal Patel, the owner of Patel Realty, gave the same admission at his deposition:

> Q: So is there any written agreement that involves signatures by both Techloss and Patel Realty as far as you know?
>
> A: I don't think so, no.

*See* Patel Dep., at 19:19-22 (Dckt. No. 36-3).

General Casualty offered admissible evidence that there was no written agreement between Techloss and Patel Realty. And Patel Realty offered no contrary deposition testimony of its own. No one testified that this tenant agreed in writing to add this landlord as an insured.

General Casualty established that there was no written agreement between Techloss and Patel Realty in its Rule 56.1 Statement of Facts. *See* Pl.'s Statement of Facts, at ¶ 34 (Dckt. No. 36). In response, Patel Realty objected that the lack of an agreement is a "legal conclusion." *See* Def. Patel Realty's Resp. to Pl.'s Statement of Facts, at ¶ 34 (Dckt. No. 48). But that response is a dodge. It is a legal conclusion whether a particular document was a binding, enforceable contract. *See Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016).

But in this context, the question is not the enforceability of an agreement, but the existence of an agreement at all. That is, did a written agreement exist? When the facts are disputed, the existence or non-existence of an agreement is a question of fact. *Id.*; *see also Cogswell v. CitiFinancial Mortg. Co.*, 624 F.3d 395, 398 (7th Cir. 2010) ("'Whether a contract exists, its terms, and the intent of the parties are *questions of fact* for the trier of fact.'") (quoting *Mulliken v. Lewis*, 245 Ill. App. 3d 512, 516, 185 Ill. Dec. 730, 615 N.E.2d 25 (1993) (emphasis in original)); *Bus. Sys. Eng'g, Inc. v. Int'l Bus. Machines Corp.*, 547 F.3d 882, 887 (7th Cir. 2008) ("When a factual dispute is present, the question of whether a contract exists is for the jury to decide.") (quoting *Hany v. Gen. Elec. Co.*, 221 Ill. App. 3d 390, 397, 163 Ill. Dec. 790, 581 N.E.2d 1213 (1991)). Either a contract existed, or it didn't. And here, Patel Realty is empty-handed. Patel Realty does not come forward with any evidence that Techloss ever agreed in writing to extend coverage to Patel Realty. On this record, the facts are undisputed – Patel Realty had no written agreement with Techloss to extend coverage under the policy.

Instead, Patel Realty relies on an expired lease between two different companies, and basically argues that Techloss inherited the terms. The briefs from the parties offer a deep dive into the history of the property and the string of landlord-tenant relationships. The backstory gets a little complicated, but it provides the backdrop for the arguments that follow. So, before drilling down into the language of the lease, it is worth recounting the history.

On September 15, 2009, Chicago Title (the owner at the time) entered into a lease with "R & R Technology Group LLC dba Techloss Consulting & Restoration, LLC." *See* Industrial Building Lease, at 1 (Dckt. No. 38-7, at 2 of 33). Note the name – the tenant was an LLC, and it was a distinct legal entity from the corporation that later purchased the insurance policy (Techloss Consulting and Restoration Inc.). The lease expressly identified the limited liability company as the "Tenant," and that name appeared on the signature block, too. *Id.*; *see also id.* at 23 (Dckt. No. 38-7, at 24 of 33).[2] (For the sake of simplicity, the Court will refer to "R & R Technology Group LLC dba Techloss Consulting & Restoration, LLC" as "Techloss *LLC*," and will refer to "Techloss Consulting and Restoration Inc." as "Techloss *Inc.*" or simply "Techloss.")

The lease covered the same premises where the accident eventually happened (and the same address listed in the General Casualty insurance policy years later) – 1613 W. Algonquin Rd. in Mt. Prospect, Illinois. *Id.* at 1 (Dckt. No. 38-7, at 2 of 33); *see also* Policy, Policy Declarations, at 1 of 5 (Dckt. No. 1-3, at 2 of 102). The lease had an expiration date of March

---

[2] The last third of the lease filed by Patel Realty is a bad copy – the middle of the pages appear to be a scan gone wrong, or perhaps a toner cartridge on its last gasp. For a better copy, see Dckt. No. 38-4. As an aside, the copy of the lease filed by Patel Realty was unsigned by Chicago Title. But the parties don't make anything out of the lack of a signature. So, like the parties, the Court assumes that a lease was in effect between Chicago Title and R & R Technology Group LLC d/b/a Techloss Consulting & Restoration, LLC.

2015. *See* Industrial Building Lease, at § 1.1(R) (Dckt. No. 38-7, at 3 of 33). So it expired more than a year before the accident.

Meanwhile, the property changed hands a few times. Chicago Title transferred the property to Algonquin-Busse Building, LLC in October 2009 (Dckt. No. 38-8), and Algonquin-Busse Building, LLC later transferred it to Patel Realty in August 2013 (Dckt. No. 38-9). *See* Pl.'s Resp. to Def. Patel Realty's Statement of Facts, at ¶¶ 35, 37 (Dckt. No. 51). The sale to Patel Realty in 2013 included an assignment of leases, including the lease to "R & R Technology Group LLC [that is, the company that did business as Techloss LLC]." *See* Dckt. No. 38-10, at 2 of 5, 5 of 5; *see also* Pl.'s Resp. to Def. Patel Realty's Statement of Facts, at ¶ 38 (Dckt. No. 51).

The tenant apparently changed, too. The tenant named in the lease – Techloss LLC – was involuntarily dissolved in February 2012. *See* Dckt. No. 38-20; *see also* Pl.'s Resp. to Def. Patel Realty's Statement of Facts, at ¶ 36 (Dckt. No. 51). At some point, Techloss Inc. (the corporation, not the LLC) apparently became the tenant, but the record does not reveal when, or how. In September 2013, the month after Patel Realty acquired the property, Techloss Inc. was the tenant and began paying rent to Patel Realty, the new landlord. *See* Karbin Dep., at 16:9 – 18:3 (Dckt. No. 36-2); Patel Dep., at 39:12-15 (Dckt. No. 36-3); *see also* Pl.'s Resp. to Def. Patel Realty's Statement of Facts, at ¶ 39 (Dckt. No. 51). (Presumably Techloss Inc. paid rent to the prior owner, too, but that fact is not in the record.)

Based on the record at hand, Techloss Inc. did not sign anything to assume the lease from Techloss LLC. Karbin testified that Techloss Inc. was never a party to the written lease:

> Q: And the written agreement that you were shown earlier in this deposition between Chicago Land Trust and Techloss LLC; your present company, Techloss, Inc., was never a party to that agreement, correct?
>
> A: Yes.

10

*See* Karbin Dep., at 31:3-7 (Dckt. No. 36-2). There is no evidence in the record that Techloss Inc. agreed in writing with Patel Realty to assume the lease of Techloss LLC.

By its terms, the written lease expired in March 2015 (again, Techloss Inc. apparently never adopted it in writing). *See* Industrial Building Lease, at § 1.1(R) (Dckt. No. 38-7, at 3 of 33); Patel Dep., at 14:10-15 (Dckt. No. 36-3). After March 2015, Techloss Inc. continued to occupy the premises, and Patel Realty remained the landlord. But at that point, there was an oral agreement only. Karbin testified that there was no written agreement:

> Q: So earlier in the deposition when Mr. Kelly asked you about Techloss being a tenant in the building, that was a true statement; you were a tenant, correct?
>
> A: Yes.
>
> Q: And you certainly – but it was a tenant pursuant to an oral agreement to pay rent, correct?
>
> A: That's correct.

*See* Karbin Dep., at 31:8-14 (Dckt. No. 36-2). In a similar vein, Patel testified that Techloss was a month-to-month tenant after March 2015, based on an oral agreement:

> Q: If your tenant paid you – you were the landlord of Techloss in 2015 when the lease expired, correct?
>
> A: Yeah.
>
> Q: The lease expired on March 31, 2015, right? If you received a rent payment in April of 2015, what did you understand that to mean?
>
> A: I mean, we already agreed on month to month, so they were looking for a place.
>
> Q: Okay. Explain to me what you agreed to.
>
> A: It was a month-to-month rent until they find something.
>
> Q: So Techloss requested a month-to-month lease after the term of the lease expired; is that correct?
>
> A: Yeah, yeah.

11

> Q: Okay. And you gave them a month-to-month lease?
>
> A: Yeah, I mean, why not?
>
> Q: Did you write anything down that memorialized that agreement?
>
> A: No.

*See* Patel Dep., at 16:19 – 17:15 (Dckt. No. 36-3); *see also id.* at 30:17-18 ("I mean, there was no lease. It was a month-to-month."); Pl.'s Statement of Additional Material Facts, at ¶¶ 43–45 (Dckt. No. 51).³ That arrangement continued until the end of July 2016, when Techloss moved out. *See* Patel Dep., at 36:12-17 (Dckt. No. 36-3).

After telling that backstory, Patel puts forward the 2009 lease as the basis for coverage under the 2015 insurance policy. The lease required the tenant (Techloss LLC) to obtain commercial general liability insurance coverage. *See* Industrial Building Lease, at § 9.1 (Dckt. No. 38-7, at 6–7 of 33). The lease also required that the policy cover the landlord, too: "All of Tenant's insurance policies shall name Landlord and Landlord's mortgagee, if any, as additional insured as their respective interests may appear . . . ." *Id.* at § 9.3. The lease defined the limited liability company as the "Tenant." *See id.* at 1.

That 2009 lease does not help Patel Realty's cause. To extend coverage beyond the named insured, the policy required a written agreement between the insured – "Techloss Consulting and Restoration Inc." – and a third party. *See* Policy, BP 70 84 11 09, at 1 of 1 (Dckt. No. 1-3, at 79 of 102). But the lease was between Techloss *LLC* and a former landlord. *See*

---

³ At the tail-end of its Response to Patel Realty's Statement of Facts, General Casualty added a page entitled "General Casualty's Statement of Additional Material Facts." *See* Dckt. No. 51, at 13 of 15. General Casualty offered five additional paragraphs, including that (1) the written lease agreement from 2009 expired in March 2015; (2) Patel Realty and Techloss Inc. entered into a month-to-month lease; and (3) Patel Realty and Techloss "never wrote down anything that memorialized their month-to-month lease agreement." *Id.* at ¶¶ 43–45. Patel Realty filed no response, so the facts are deemed admitted. In any event, the facts in those paragraphs are consistent with the undisputed facts already in the record.

12

Industrial Building Lease, at 1 (Dckt. No. 38-7, at 2 of 33). An agreement between Techloss LLC and a former landlord is not an agreement between Techloss Inc. and Patel Realty.

Maybe Techloss LLC and Techloss Inc. had the same owners, the same real estate, and the same business model. The names are largely the same, too. Even so, they are distinct legal entities. Absent an agreement of some kind, the corporation was not responsible for the LLC's contractual obligations, even if they were part of the same corporate family. *See Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 610 (7th Cir. 2009) ("A corporation exists separately from its shareholders, officers, directors and related corporations, and those individuals and entities ordinarily are not subject to corporate liabilities."); *see also Main Bank of Chicago v. Baker*, 86 Ill. 2d 188, 204, 56 Ill. Dec. 14, 427 N.E.2d 94 (1981) ("Nor does the use of common officers and directors of itself render one corporation liable for the obligations of another.") (citation omitted); *Weston v. Progressive Commercial Holdings, Inc.*, 2011 WL 231709, at *2 (D. Del. 2011) ("A corporation is also generally not liable for the acts of its sister corporation absent a showing that the sister corporation was an alter ego or acted as an agent.") (citation omitted); 18 C.J.S. *Corporations* § 6 (Mar. 2020 update) ("[C]orporations are separate legal entities even where one wholly owns the other and the two have mutual dealings. Courts will recognize the separate identities of corporations even when one corporation treats the other corporation as a mere department, instrumentality, or agency of the other.") (citations omitted). Techloss LLC entered into a written agreement to obtain coverage for the landlord as an additional insured. But based on the current record, Techloss Inc. did not.

It makes no difference if the lease was assigned to Patel Realty, because the tenant was not the same. The assignment gave Patel Realty rights to a lease signed by Techloss LLC, not Techloss Inc. There is no evidence in the record that Techloss Inc. entered into a written

13

agreement with Patel Realty to assume the contractual obligations of Techloss LLC under the lease. Techloss LLC agreed to obtain a policy that protected the landlord as an additional insured. *See* Industrial Building Lease, at § 9.3 (Dckt. No. 38-7, at 7 of 33). But Techloss Inc. did no such thing. Patel Realty offers no evidence that the corporation (Techloss Inc.) assumed the contractual obligations of the limited liability company (Techloss LLC).

In the end, Patel Realty's argument boils down to the notion that Techloss Inc. made an *oral* agreement to assume the lease of Techloss LLC, and then made an *oral* agreement to extend those terms on a month-to-month basis after the lease expired. But an oral agreement doesn't cut it. Under Illinois law, an insurance policy is treated like any other contract. *See Westfield Ins. Co .v. Vandenberg*, 796 F.3d 773, 777 (7th Cir. 2015). The plain text prevails, and a court must give effect to all of the terms. *See Auto-Owners Ins. Co. v. Munroe*, 614 F.3d 322, 325 (7th Cir. 2010) ("Like any contract [under Illinois law], an insurance policy is construed according to the plain and ordinary meaning of its unambiguous terms."); *Milwaukee Mut. Ins. Co. v. J.P. Larsen, Inc.*, 2011 IL App. (1st) 101316, ¶ 8, 353 Ill. Dec. 662, 956 N.E.2d 524 (2011) ("We construe an insurance policy as a whole, using the plain and ordinary meaning of the terms to give effect to every provision.").

Based on the plain language, the policy covers an "additional insured" only if Techloss "agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy." *See* Policy, BP 70 84 11 09, at 1 of 1 (Dckt. No. 1-3, at 79 of 102). "Agreed in writing" does not mean "agreed orally." *See Cincinnati Ins. Co. v. Gateway Constr. Co.*, 372 Ill. App. 3d 148, 152, 310 Ill. Dec. 71, 865 N.E.2d 395 (2007) ("A policy must not be interpreted in a manner that renders provisions of the policy meaningless."); *Cent. Illinois Light Co. v. Home Ins. Co.*, 213 Ill. 2d 141, 153, 290 Ill. Dec. 155, 821 N.E.2d 206 (2004) ("An

14

insurance policy, like any contract, is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose."). The phrase "in writing" means what it says, and it means that only a written agreement counts.

Techloss Inc. might have *orally* agreed to the same terms as the lease, but based on the record, Techloss Inc. never "agreed in writing" to obtain coverage for Patel Realty. So, based on the plain language of the policy, Patel Realty is not an additional insured.

Patel Realty makes two final attempts to make Techloss Inc. responsible under the terms of the 2009 lease. It points to a "Merger or Consolidation" provision in the lease, which says that the lease is transferred to a new entity if there is a change in control. "If Tenant is a partnership or limited liability company, any transaction or series of transactions . . . resulting in the transfer of control of Tenant, shall be deemed to be a voluntary assignment of this Lease by Tenant subject to the provisions of this assignment of this Lease by Tenant subject to the provisions of this **Article XIV**." *See* Industrial Building Lease, at § 14.4 (Dckt. No. 38-7, at 9 of 33) (emphasis in original).

But Techloss LLC wasn't involved in a merger or consolidation. There is no evidence that it experienced a "transfer of control." *Id.* It didn't fold into some other entity. The only evidence in the record is that it was involuntarily dissolved. *See* Dckt. No. 38-20. When Techloss LLC ceased to exist, its contractual obligations went with it, and they did not automatically transfer to Techloss Inc.

As a final fallback position, Patel Realty argues that the plaintiff in the underlying suit *alleged* that there was a lease between Patel Realty and Techloss. *See* Third Am. Cplt. in *Karbin v. Shargio Patel Realty, LLC et al.* (Ill. Cir. Ct. 2018) (Dckt. No. 38-5). Karbin alleged that he

15

"worked for a company called TechLoss Consulting & Restoration, Inc. which leased space at the Premises." *Id.* at ¶ 2; *see also id.* at ¶ 1 ("On or about July 11, 2016, and at all times material, Defendant PATEL REALTY owned, managed and/or leased to third parties certain property . . . .").

It may be true that Patel Realty and Techloss Inc. had a landlord-tenant relationship. But standing alone, that relationship is not enough to carry the day. Karbin did not allege that there was a written lease. And more importantly, he didn't allege there was a written lease that required Techloss Inc. to obtain insurance coverage for Patel Realty.

Even if that allegation had appeared in Karbin's complaint, it wouldn't be enough. The allegations of the underlying complaint are not dispositive. Courts can consider extrinsic evidence about the duty to defend when an insurer files a declaratory judgment action. *See Landmark Am. Ins. Co. v. Hilger*, 838 F.3d 821, 826 (7th Cir. 2016) ("To reiterate, an insurer seeking a declaratory judgment on its duty to defend is entitled to introduce evidence outside the underlying complaint so long as it does not implicate an 'ultimate issue' in the underlying action."); *see also Fid. & Cas. Co. of N.Y. v. Envirodyne Eng'rs, Inc.*, 122 Ill. App. 3d 301, 305–06, 77 Ill. Dec. 848, 461 N.E.2d 471 (1983), *cited with approval in Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1020 (Ill. 2010).

That is, courts are not confined to the "eight corners" of the policy and the underlying complaint when the insurer challenges the duty to defend in a separate action. And here, the extrinsic evidence shows that there was no written agreement between Techloss Inc. and Patel Realty to extend coverage as an additional insured.

Despite the complicated history, the answer is simple. Under the policy, there is no coverage for a third party unless the insured "agreed in writing in a contract or agreement that

16

such person or organization be added as an additional insured on our policy." *See* Policy, BP 70 84 11 09, at 1 of 1 (Dckt. No. 1-3, at 79 of 102). There was no such written agreement between Techloss Inc. and Patel Realty. As a result, Patel Realty is not an additional insured under the policy.

## II. Coverage of Techloss

General Casualty then argues that it has no duty to defend or indemnify Techloss because of a "bodily injury" exclusion in the policy. Unlike Patel Realty, Techloss is a named insured.

Based on the summary judgment briefs, it was not clear to this Court why this argument presented a live issue. The underlying lawsuit is over, and it did not appear that Techloss is seeking anything from General Casualty, including indemnification or attorneys' fees. Techloss did not even file a response to General Casualty's summary judgment motion (but no party explained why).

And of all things, Patel Realty responded to General Casualty's argument, even though it was directed at Techloss only. It was not obvious why Patel Realty responded to an argument that General Casualty owes no coverage to Techloss. Patel Realty's briefs created the impression that it believed that the insurer was invoking the bodily injury exclusion as a second, independent reason to deny coverage to Patel Realty (that is, a reason above and beyond the issue of whether it is an "additional insured").

This Court ordered supplemental briefing to clear things up. *See* 5/6/20 Order (Dckt. No. 72). In response, Techloss confirmed that it "does not have an interest in the outcome of General Casualty's Motion for Summary Judgment seeking a declaration that it does not owe coverage to Techloss, Inc., for the underlying action. From Techloss, Inc.'s perspective, the coverage determination sought in Count I of the declaratory judgment complaint is now moot." *See*

17

Techloss'[s] Statement Regarding General Casualty's Motion for Summary Judgment, at 2 (Dckt. No. 73). In a similar vein, Suburban Real Estate (the third-party plaintiff in the underlying action) confirmed that it has no live claims against Techloss that could implicate coverage. *See* Suburban Real Estate Services, Inc.'s Statement Regarding General Casualty's Motion for Summary Judgment, at 1–2 (Dckt. No. 75). Finally, General Casualty "agrees that the issue is moot" because "Techloss has now stated that it seeks no defense from General Casualty with respect to the Underlying Lawsuit." *See* General Casualty's Statement Responding to Court's Questions Regarding Summary Judgment, at 1 (Dckt. No. 76).

The Court agrees with all parties that there is no live issue on Count I (that is, the claim by General Casualty against Techloss). General Casualty sought a declaratory judgment that it owes no duty to defend or indemnify Techloss, but Techloss seeks nothing under the policy. Accordingly, General Casualty's motion for summary judgment on Count I is denied as moot. And more broadly, Count I is dismissed as moot because there is no live dispute between General Casualty and Techloss.

Patel Realty responded to General Casualty's argument against Techloss under the bodily injury exclusion, even though the argument did not seem directed at Patel Realty. This Court requested an explanation. *See* 5/6/20 Order (Dckt. No. 72). In response, Patel Realty stated that it "misapprehended a line in plaintiff's motion, and mistook it for an assertion that the employer's liability exclusion was also cited with respect to any claim for coverage (and not just Techloss)." *See* Shargio Patel Realty, LLC's Statement Responding to the 5-6-20 Minute Order, at 1 (Dckt. No. 77). Counsel for General Casualty later confirmed that it made no such argument. *Id.*; *see also* General Casualty's Statement Responding to Court's Questions Regarding Summary Judgment, at 1 (Dckt. No. 76) ("General Casualty does not assert that the

employer's liability exclusion applies to bar coverage to Patel Realty."). So the argument under the bodily injury exclusion does not present a live dispute involving Patel Realty, either.

### III. Coverage of Suburban Real Estate

General Casualty also moved for summary judgment against Suburban Real Estate (the third party plaintiff in the underlying case). The insurer requested a declaration that it owed no coverage. *See* General Casualty's Mem. of Law in Support of its Motion for Summary Judgment, at 10–11 (Dckt. No. 35).

But the complaint does not appear to include a claim against Suburban Real Estate. Count I is against Techloss. Count II is against Patel Realty. Count III is against Chicago Title, and Count IV is against Algonquin-Busse. *See* Cplt. (Dckt. No. 1). And in fact, General Casualty's own Rule 56.1 Statement of Facts says that "[n]o specific relief is sought against Suburban." *See* Pl.'s Statement of Facts, at ¶ 4 (Dckt. No. 36). This Court cannot grant summary judgment on a claim against Suburban Real Estate because there is no claim against Suburban Real Estate.

In any event, even if General Casualty had advanced a claim, there would be no live issue given that Suburban Real Estate seeks nothing under the policy. *See* General Casualty's Statement Responding to Court's Questions Regarding Summary Judgment, at 1 (Dckt. No. 76).

### Conclusion

General Casualty's motion for summary judgment is granted in part and denied in part. The motion is denied as moot on Count I (against Techloss). Count I is dismissed as moot. The motion is granted on Count II (against Patel Realty). Patel Realty's motion for summary judgment is denied.

Date: May 15, 2020

Steven C. Seeger
United States District Judge

20